IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GUSTAVO ADOLFO LOPEZ-REYNOSO | § | |
| | § | |
| V. | § | A-17-CV-083-LY |
| | § | (A-16-CR-077-LY) |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Gustavo Adolfo Lopez-Reynoso's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 34), and the Government's Response (Dkt. No. 41). The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I. GENERAL BACKGROUND

On April 5, 2016, Gustavo Adolfo Lopez-Reynoso ("Lopez") was charged with (1) illegal reentry following deportation, in violation of 8 U.S.C. § 1326, and (2) possession with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. § 841. Dkt. No. 11. On May 26, 2016, pursuant to a plea agreement, Lopez entered a plea of guilty to both Counts. Dkt. No. 28. On August 19, 2016, the District Court sentenced Lopez to 120 months imprisonment, a three-year term of supervised release, and ordered him to pay a $100 special assessment fee for each charge, for a total special assessment of $200. Dkt. No. 29. Lopez did not file a direct appeal.

On February 6, 2017, Lopez filed this Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 arguing that (1) he was denied the effective assistance of counsel, (2) the

District Court enhanced his sentence based on a "an erroneous state charge," and (3) his conviction was invalid because the Government did not have a valid search warrant when it seized the drugs during his arrest.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id*. A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).

In his § 2255 Petition, Lopez argues that his attorney was ineffective when he permitted Lopez to enter a plea of guilty before ordering a competency evaluation to ensure he was competent at the time of his offense and his sentencing. Lopez alleges he "suffers from 'Myasthenia gravis' which resulted in decrease in the defendant mental capacity to make clear and rational decisions during the date of the offense and at the defendant sentencing [sic]." Dkt. No. 34 a 1. Other than this conclusory statement, Lopez has failed to introduce any evidence that his diagnosis of myasthenia gravis affected his mental competency.

"A criminal defendant may not be tried unless he is competent and he may not plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (internal citations omitted). The standard for competence for pleading guilty or for standing trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal citations omitted)). A defense counsel's duty to investigate the competency of his client only arises when "it becomes clear that the client is suffering from mental health difficulties rendering him insane or incompetent to stand trial." *Miller v. Dretke*, 420 F.3d 356, 363 (5th Cir. 2005). As a threshold matter, a petitioner in a habeas proceeding who claims that he was incompetent at the time of his plea must first present "meaningful evidence" of mental incompetence at the time of the plea. *See Demosthenes v. Baal*, 495 U.S. 731, 736 (1990) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 166 (1990)). The petitioner must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt" as to his mental competency at the time of the plea. *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998), *cert. denied*, 526 U.S. 1092 (1999) (emphasis added) (quoting *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir.1996), *cert. denied*, 520 U.S. 1122 (1997)).

Lopez has failed to present any evidence whatsoever that there was any legitimate doubt as to his mental competency at the time of his plea or offense. There is no evidence in the record showing that Lopez suffers from any mental health issue, let alone that he was mentally incompetent to stand trial. While the Presentence Investigation Report ("PSR") shows that Lopez was diagnosed with myasthenia gravis in 2005, there is no indication in the record that this condition diminished

his mental capacity in any way. Dkt. No. 26 at 14. In fact, myasthenia gravis is not a mental disorder but, rather, is "[a] neuromuscular disease contributing to muscle weakness and fatigue." Dkt. No. 26 at 14. The Mayo Clinic describes myasthenia gravis as follows:

> Myasthenia gravis . . . is characterized by weakness and rapid fatigue of any of the muscles under your voluntary control.
>
> Myasthenia gravis is caused by a breakdown in the normal communication between nerves and muscles.
>
> There is no cure for myasthenia gravis, but treatment can help relieve signs and symptoms, such as weakness of arm or leg muscles, double vision, drooping eyelids, and difficulties with speech, chewing, swallowing and breathing.

Mayo Clinic Online Information, http://www.mayoclinic.org/diseases-conditions/myasthenia-gravis/home/ovc-20200259 (last visited Aug. 22, 2017). There is no indication in the record that the disorder had any impact on Lopez's mental capacity. In fact, Lopez never alleged that he had an issue with mental competency until he filed this § 2255 Motion. For example, he reported to his probation officer that "he has no history of mental illness or emotional disorders." Dkt. No. 26 at 14. In addition, Lopez never reported to the Court that he had any issues with his competency. In fact, the record shows that Lopez was competent at the time of his plea and sentencing and that he was pleading guilty knowingly and voluntarily:

THE COURT: Mr. Ibbotson, have you had a sufficient amount of time to meet with each of your clients and discuss their cases with them?

MR. IBBOTSON: Yes, sir.

THE COURT: Have you explained to them their right to a jury trial and the other rights that go with that?

MR. IBBOTSON: I have.

THE COURT: Do you believe that each of your clients has a factual as well as a rational understanding of the proceedings against them?

| | |
|---|---|
| MR. IBBOTSON: | Yes, sir, I do. |
| THE COURT: | Do you have any doubt as to any of your clients' competence to make a plea today? |
| MR. IBBOTSON: | I have no doubts. |
| THE COURT: | Gentlemen, have you ever suffered any injury or medical condition or any kind of an impairment that would prevent you from understanding the proceedings here today? |
| LOPEZ: | No Sir. |
| THE COURT: | And are you taking any medications or anything else today that would affect your judgment or your understanding? |
| LOPEZ: | No, sir. |
| THE COURT: | Now have each of you had enough time to meet with your attorney and to discuss your case with him? |
| LOPEZ: | Yes, sir. |
| THE COURT: | And have you spoken to Mr. Ibbotson about anything that you think it would be important for him to know about you or about your case so that he can do a good job representing you? . . . |
| LOPEZ: | Yes, sir. |

Dkt. No. 39 at 5-7. As is plain from this series of questions, as well as Lopez's answers, he displayed no sign of a problem with his mental competency at the time of his plea. The same is the case for his sentencing hearing—Lopez also displayed no issues with his competency:

| | |
|---|---|
| THE COURT: | Mr. Lopez, do you reaffirm the statements that you have made in your plea agreement as well as the statements in the factual basis that was presented to Judge Austin at the time you made your plea of guilty? |
| LOPEZ: | Yes, sir. |

\* \* \*

| | |
|---|---|
| THE COURT: | Mr. Lopez, Mr. Ibbotson, if either or both of you have anything you would like to say to the Court before sentence is imposed I will hear from you at this time and I will take whatever you have to say into account in determining the appropriate sentence to impose in this case. |
| LOPEZ: | I would just like to apologize for taking up your time. I accept my responsibility. And I'll just say that there's no excuse for my actions, but I would like to say I'm sorry. I'm sorry . . . . |

Dkt. No. 40 at 3-5.

Thus, both the plea and sentencing hearings show that there was no indication that Lopez suffered from any competency issues. Lopez has failed to point to any evidence showing that he was in any way mentally incompetent at the time of his plea or sentencing. Because Lopez has failed to present any evidence that there was a real, substantial, and legitimate doubt to his ability to stand trial, his attorney did not provide ineffective assistance when he failed to request a competency evaluation for Lopez. *See Washington v. Davis*, 2017 WL 2126650, at *2 (N.D. Tex. April 3, 2017) (attorney was not ineffective for failing to order competency exam since there was no indication that defendant suffered from mental health difficulties rendering him incompetent to stand trial); *United States v. Samuels*, 2013 WL 1789512 at * 5 (E.D. La. April 26, 2013) (attorney did not provide ineffective assistance of counsel by failing to order competency exam when there was no evidence that defendant was mentally incompetent).

Even if Lopez's counsel did have a duty to investigate more deeply into his competency to stand trial, Lopez has failed to allege, much less show, that he was prejudiced., *i.e.*, that the outcome of the plea process would have been different had counsel made such an investigation. *See Miller*, 420 F.3d at 361 ("To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial."). There is no evidence that if counsel had made an investigation

7

into Lopez's competency, he would not have pleaded guilty and would have instead proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Accordingly, Lopez's ineffective assistance of counsel claim is without merit.

**B.     Waiver**

In addition to his ineffective assistance of counsel claim, Lopez also argues that the District Court erred by enhancing his sentence based on "an erroneous state charge," and that his conviction was invalid because the Government did not have a valid search warrant when it seized the drugs during his arrest. These claims are barred by the waiver provision contained in Lopez's Plea Agreement.

A defendant may waive his right to a direct appeal and his rights under § 2255 as part of a plea agreement. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). The district court is responsible for insuring that "the defendant fully understands [his] right to appeal and the consequences of waiving that right." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir.1992), *cert. denied*, 508 U.S. 956 (1993). "To be valid, a defendant's waiver of his right to appeal must be informed and voluntary. A defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'" *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir.1994), *cert. denied*, 513 U.S. 893 (1994) (quoting *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992)).

In his Plea Agreement, Lopez waived his right to collaterally attack his conviction and sentence, including via a proceeding under 28 U.S.C. § 2255, with the exception of claims based on ineffective assistance of counsel or prosecutorial misconduct. Dkt. No. 18 at 5. Not only does the

8

written Plea Agreement show that Lopez knowingly and voluntarily waived his right to appeal or collaterally attack his conviction or sentence, but the transcripts of the plea proceeding demonstrates it as well. *See* Dkt. No. 39. Specifically, at the plea proceeding the undersigned discussed the waiver of appeal provision with Lopez:

THE COURT: Okay. And then the other -- the other part of your plea agreement is that there's a waiver of appeal provision in this agreement. By the agreement, if Judge Yeakel accepts it, then you won't have the right to appeal the sentence --

LOPEZ: Yes, sir.

THE COURT: -- or the convictions, except in a very limited -- very limited bases. Two reasons you could appeal: One would be if you are contending that either your lawyer was ineffective or the government's lawyer engaged in misconduct, you can appeal or file a separate proceeding to challenge your conviction or your sentence. In addition, if your sentence were higher than the -- than the statute allows, if for any reason that happened, you could appeal that. Other than that, by this agreement, you won't have any other right to appeal your sentence or your convictions. Do you understand that?

LOPEZ : Yes, sir.

THE COURT: All right. And you talked to Mr. Ibbotson about that part of your agreement?

LOPEZ: Yes, sir.

Dkt. No. 39 at 11-12. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Accordingly, the Court finds that Lopez waived these claims and that he is procedurally barred from bringing such claims in the instant § 2255 motion.[1]

---

[1] Although Lopez did not allege in his § 2255 petition that his attorney was ineffective for failing to argue that his sentence had been erroneously enhanced or that the government did not have a valid search warrant, the Government nevertheless addresses those issues in its Response Brief. Even if Lopez had argued that his attorney was ineffective for failing to makes such arguments —which he did not—such claims would nevertheless fail because Lopez cannot show that he was prejudiced. Lopez has failed to demonstrate that there was a reasonable probability that, but for

## IV. RECOMMENDATION

In accordance with the preceding, the undersigned **RECOMMENDS** that the District Court **DENY** the Motion to Vacate (Dkt. No. 34).

## V. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VI. CERTIFICATE OF APPEAL

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)

---

counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

SIGNED this 22nd day of August, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE